YARRUT, Judge.
Plaintiff appeals from a judgment in favor of Defendant denying her recovery for personal injuries allegedly suffered when she, as a passenger, was about to enter or had actually entered a taxicab bonded by Defendant. The taxicab was in control of a driver of the Morrison Cab Company, bonded by Defendant under Municipal Ordinance.
Defendant admits its bonded liability if the taxicab driver was negligent.
The incident happened early in January 1957, about 11:30 P.M., on Canal Street in front of the Teche Greyhound Bus Station in New Orleans, where passengers board taxicabs.
Plaintiff charges that, as she was partially in the cab, it suddenly went backward, dragging her about 20 feet; and explains that, “I went to get a cab and the cab driver told me to get in the cab, and he went to put my luggage in the back, and he got out the cab, he left the cab in gear, and just as I was getting in the cab I discovered the cab was going back and I tried ■ to hold the seat of the cab to keep from falling. W.ell, my coat got hung in the cab door, and it throwed me on my back and the cab went back fast, fast.”
Later, after first testifying the driver was at the colored waiting room when she went to get into the cab, and the cab was in gear and the motor running, continued:
“A. He left the cab in gear, and when I got in the cab I discovered that the cab was moving. I tried to hold onto the seat of the cab and I saw it moving so fast, I tried to hold onto the seat of the cab, and that time my coat got caught in the cab and it throwed me on my back and half of me was in the cab and the other part was on the ground.
“Q. You know the cab was in gear?
“A. Yes, sir, it was in gear;”
and further testified the driver took her luggage to the rear to put it in the trunk and told her to get in; while partly in, the cab moved backward “fast” about 25 feet and dragged her, half in and half out of the cab.
If her version were true, then the cab driver would have been run over in the rear.
The taxi driver testified there was no backing of the cab, explaining (supported by a photograph) that the street where the cabs park awaiting passengers while on a level plane, has many “cuppy” indentations, about a foot in diameter and gradually sloping to the center to a depth of three inches; that the cab could have backed not more than one foot at most into one of these indentations.
The driver further testified that Plaintiff was fully in the cab when she suddenly sat down. She complained she was hurt. He offered to take her to the Charity Hospital, but she declined and insisted he take her to her daughter first, which he did. Then he took them both to the Hospital. The daughter testified the driver admitted his fault, which he denied.
*252 Plaintiff further testified:
“Q. Now, when the cab went back what did the driver do ?
“A. The driver was hollering. He say, ‘Oh, the lady going to get killed, the lady going to get killed,’ and the people were just hollering, and he ran in to try to cut the motor off, and it had run back a good piece, and when he jumped in the cab it was running so fast, it run about ten feet, and he jumped in there to try to stop the cab, and it was going so fast it didn’t stop immediately and it ran back altogether about twenty-five feet.”
Notwithstanding all this alleged commotion, denied by the driver and the cab starter at the bus station, none of the many people present and “hollering” were summoned by Plaintiff to testify.
While Defendant’s answer (Art. VII) alleges that Plaintiff started toward the “parked cab,” but before reaching it stumbled and fell against the cab, the testimony of the driver is that she fell in the seat of the cab after she was completely inside.
Very significant regarding the credibility of Plaintiff is the testimony of Defendant’s doctor that, when he called at Plaintiff’s residence to examine her, she refused to be examined, the apparent reason being that she was in bed under the bed covers fully dressed, indicating she had no time to get into bed without undressing when the doctor arrived unannounced, all for the apparent purpose of having the doctor believe she was bedridden and unable to get about.
At the conclusion of the trial the District Judge concluded:
“On the preponderance of the believable testimony, the Court will dismiss the plaintiff’s suit at plaintiff’s costs. There will be a judgment accordingly.”
From this conclusion of the District Judge, it is clear he observed the contradictions and inconsistencies of both Plaintiff and Defendant, and concluded Plaintiff" had not sustained the burden of proof by a preponderance of the evidence, with which we cannot disagree.
From the above and foregoing reasons,, the judgment of the District Court is affirmed; costs in both courts to be paid by Plaintiff.
Affirmed.